UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTO INDUSTRIES SUPPLIER EMPLOYEE
STOCK OWNERSHIP PLAN (ESOP),

        Plaintiff                       Hon. Avern Cohn
                                                            Case no. 03-74357

Vs.

SNAPP SYSTEMS, INC.,

        Defendant/Third Party Plaintiff

Vs

FORD MOTOR COMPANY, a Delaware
Corporation, SUSAN E. KOBET, Individually,
DIAN SENDEK MARCHESE, Individually,
CARMEN ZIRLES, Individually, and
JEFFREY D. COLLINS, Individually,

        Third Party Defendants
_____/

| | |
|---|---|
| E. Powell Miller (P39487) | Kenneth J. McIntyre (P17450) |
| David Fink | DICKINSON WRIGHT, P.L.L.C. |
| MILLER SHEA, P.C. | Attorney for Third Party Defendant |
| 950 West University Drive, Ste. 300 | 500 Woodward, Ste. 4000 |
| Rochester, MI 48703 | Detroit, MI 48226 |
| (248) 652-2852 | (313) 223-3500 |

Jeffrey D. Stamper, Esq.
JEFFREY D. STAMPER PLLC
Co-counsel for Third Party Plaintiff
9300 Shelbyville Road, Ste. 402A
Louisville, KY 40222
(502) 515-3343

**REPORT AND RECOMMENDATION OF THE
SPECIAL MASTER REGARDING DOCKET #
221 AND 237, FORD'S MOTION FOR SUMMARY
JUDGMENT ON COUNT I (PARTNERSHIP) AND
SNAPP'S MOTION FOR SUMMARY JUDGMENT
ON COUNT I (PARTNERSHIP)**

This matter was referred to the undersigned as Special Master, pursuant to the Order of the Honorable Avern Cohn dated January 27, 2006.  Briefs have been filed and reviewed.  The Special Master requested and heard oral argument,

For the reasons stated herein, the Special Master recommends that:

    1.  Ford's motion for Summary Judgment on Count I (Partnership), docket # 221, be GRANTED.

    2.  SNAPP'S motion for Summary Judgment on Count I (Partnership), docket # 237, be DENIED.

## I. PREFACE

### A. COUNT I AS PLED

Count I states the requisite language to establish a partnership count under Michigan's Partnership Act, M.C.L.A. 449.6.  It alleges that the relationship of the Parties "constituted an association of two or more persons as co-owners carrying on a business for profit." First Amended Third Party Complaint and Jury Demand, ("Complaint") paragraph 24.  It alleged that as a result, fiduciary obligations arose. Complaint, paragraph 27.

### B. SYNOPSIS OF FORD'S MOTION

Factually, Ford asserts that neither Party, orally or in writing, claimed the existence of a partnership at any relevant time. Further, the documentary evidence supports an inference no partnership was intended. Finally, Snapp's President at relevant times, Bhagwan P. Thacker, admitted no partnership existed.

Legally, Ford asserts that the case of Byker v Mannes, 465 Mich 637 (2002) controls and requires a finding that no partnership existed.

### C. SYNOPSIS OF SNAPP'S MOTION

Factually, Snapp asserts that the Parties acted as partners. Legally, Snapp asserts that the case of Byker, Supra, controls and requires a finding that a partnership existed.

## II. DISCUSSION

### A. LEGAL STANDARD

The parties to this lawsuit seemingly agree on the appropriate legal standard for summary judgment under Rule 56. The principles are obviously well known to the Court and are only briefly summarized here. The Special Master has selected the principles from the parties' I-Ra-MPP briefs.

1. The movant has the burden of demonstrating an "absence of evidence to support the non-moving party's case." Celotex Corp. v Catrett, 477 U.S. 317, 325 (1986).

2. When that burden is met, the non-moving party must "do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Electrical Indus. Co., Ltd.</u> v <u>Zenith Radio Corp.,</u> 475 U.S. 574, 586 (1986).

3. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Ashbrook</u> v <u>Block,</u> 917 F.2d 918,921 (6th Cir., 1990).

4. Summary Judgment is only proper when there exists an "absence of a genuine issue of material fact." <u>Street</u> v <u>J.C. Bradford & Co.,</u> 886 F.2d 1472, 1479-80 (6th Cir. 1989).

**B. ESSENTIAL FACTS**

But for Snapp's inspired and inspiring advocacy, it is difficult to see the parties in a relationship other than a contractual one.

The following factual discussion is derived from the Statement and Counter Statement of Material Facts, which unless indicated, are not in dispute. Unless disputed, citations to particular factual assertions are omitted. For the purposes of brevity, this section will not be repeated in other reports.

Plaintiff is the employee stock ownership plan whose "participants include former Snapp officers, directors, and employees.

Defendant-Third Party Plaintiff SNAPP SYSTEMS, Inc. ("Snapp"), a Delaware Corporation, began in 1991. When it began in 1991, it had 6-10 employees. Thacker owned all shares of Snapp at relevant times.

Third Party Defendant, Ford Motor Company ("Ford"), is a Delaware Corporation.

Beginning in 1991, Ford entered into a relationship with Ford. The scope of that relationship is in dispute. Ford maintains it was one of supplier and purchaser. That is, Snapp was retained to act as a purchasing agent for "procurement of computer software." CSMF, p. 18. Snapp maintains it was Ford's partner. The subject matter of the partnership was obtaining and sharing cost savings due to its efforts. The relationship ended in 1999-2000.

Several written agreements were entered into by the parties. Neither party disputes their existence but argues their scope. Further, Snapp argues that certain oral statements form part of the contractual relationship and are the basis of several contractual and fraud claims.

### C. WRITTEN AGREEMENTS

As stated, the Parties acknowledge execution of the following agreements but dispute their importance. The first four agreements are computer commodity agreements ("CCAs"). Ford argues that they essentially form the basis of the contractual relationship of the parties. Snapp argues that they form only a part thereof. It is fair to say the term CCA is Snapp's designation. However, at least for the sake of convenience, Ford adopted its use in oral argument.

**1. Agreement dated October 3, 1991.**

5

This was the first of the CCAs and had a term of one year. It provided that Snapp (therein referred to as DSSI) "will provide to Ford services consisting primarily of purchasing certain computer software items used by Ford…" Paragraph 1.1.

Central to this dispute is section 4.3 which states: "As an incentive to DSSI for obtaining a better price on an item for FORD, DSSI shall retain one-half of the Savings as operating profit and shall return the remainder of said Savings to FORD in the form of additional services and/or reductions in the mark-up charged by DSSI on future purchases as specified by Ford."

Snapp sees this clause, its references to savings and profit as language which furthers its partnership claim. Ford sees the language as incentive language only.

Paragraph 7.3 states: The parties hereto are and shall remain independent contractors. Nothing herein shall be deemed to establish a partnership, joint venture, or agency relationship between the parties. Neither party shall have the right to obligate or bind the other except as provided for in this Agreement.

The parties do not disagree as to the meaning of this clause, but do disagree as to its effect. Ford looks to the plain meaning of the language. Snapp views the language as generally irrelevant under its analysis of <u>Byker, supra.</u>

Paragraph 7.6 states: "The entire agreement between the parties is incorporated in this Agreement and supercedes and merges all prior discussions and agreements between the parties relating to the subject matter hereof. This Agreement can be modified only by a written amendment duly signed by persons authorized to sign agreements on behalf of DSSI and FORD. The term 'This Agreement' as used herein includes any applicable

6

schedule or future written amendment made in accordance herewith." Each of the four CCAs contain this clause.

There is complete disagreement as to the meaning and scope of this clause. Ford sees this as a merger clause which bars all evidence of prior inconsistent agreements. It cites <u>UAW-GM Human Resource Center v KSL Recreation Corporation</u>, 228 Mich App 486 (1998) in support of this proposition. UAW-GM will be discussed in other sections of this report.

Snapp argues this to be a partial merger clause at best. It argues that, while not relevant to this discussion per se, the clause does not bar evidence of fraud it seeks to admit. Relevant to this discussion, it deems the language "relating to the subject matter hereof" to be limiting language.

### 2. Agreement dated November, 1992

This agreement had a term of one year automatically renewing for one year terms unless terminated. Although broader than its predecessor, contemplating purchasing of computer hardware and "other commodities and service items" in addition to software, it contained the other clauses described above.

### 3. Agreement dated October 26, 1994

This agreement contains the same clauses described above, and others to be discussed in other sections of this Report.

### 4. Frame Work Agreement dated November, 1993

This agreement was for a term of one year to be renewed automatically unless terminated. It contains the same clauses described above, and others to be discussed in other sections of this Report. This Agreement was amended in writing on August 9,

1996.  That writing provided for a three year term, renewable at the end of any year.  It provides for, among other things, a "target 1.75% net profit before tax and cost savings."  This will be the subject of other sections of this Report.

### 5. Agreement Between Ford and Snapp Dated 10/1/99

This is an agreement with a term of three months which evidences the termination of the relationship between Snapp and Ford.  Its terms will be discussed in other sections of this Report.

### D. DISCUSSION OF CASE LAW

As suggested above, central to the resolution of these motions is the analysis of Byker, supra.  While other cases preceded Byker, it is the opinion of the special master that Byker controls the outcome of this motion.

Byker was an accountant who did work for Mannes in 1985.  They entered into a relationship involving business enterprises.  They stipulated to the following: (T)he Plaintiff… and Defendant…agreed to engage in an ongoing business enterprise, to furnish capital, labor and/or skill to such enterprise, to raise investment funds and to share equally in the profits…"Byker, supra, p.641. They also stipulated that they created five separate business entities, each of which involved the sharing of commissions, financing fees and termination costs.

One of these entities owned and operated a marina, which suffered financial difficulties.  The parties took profits from another entity and put them into the marina project.  Defendant ceased funding the projects.  Eventually, Byker requested payment to equalize his losses.  He brought suit alleging the existence of a partnership.

8

The Court noted that in 1994 the Uniform Partnership Act, which previously defined partnership as "the association of two or more persons to carry on a co-owners a business for profit," added the following language, "**whether or not the persons intend to form a partnership."** Byker, supra, p. 644. The Court noted that the while the additional language had not been adopted by the Legislature, "The statutory language is devoid of any requirement that the individuals have the subjective intent to create a partnership." Byker, supra, p. 645.

At least under Michigan law, the added language was deemed surplussage by the Court. The Court saw the common law as consistent with the above, and "individuals would be found to have formed a partnership if they acted as partners, regardless of their subjective intent to form a partnership." Byker, supra, p. 648.

The Court concluded that "the intent to create a partnership is not required if the acts and conduct otherwise evidence that the parties carried on as co-owners a business for profit." Byker, supra, p. 653.

In its synopsis of its opinion, the Court used the word "unimportant" to describe its view of the parties' subjective intent. Byker, supra, p. 638.

It would be easy to ascribe too much importance to the use of that word. In the context of the use of the word, the Court referred to how the parties would label themselves. In Byker, there was no written agreement between the parties which used the word partner. However, the stipulation of the parties used the words "ongoing business enterprise, " and "share equally in the profits and losses" Byker, supra, p. 639

The Special Master does not, in this Report, equate the word "unimportant" with "irrelevant." That is, ultimately, in light of the stipulation of the parties, their subjective

9

and retroactive label may well be unimportant. Without such, prospective labeling by the parties of their intent is relevant to determine such intent.

In <u>Byker,</u> the parties expressed no contemporaneous intent as to the existence or non existence of a partnership. The Court then looked to the behavior of the parties to determine such existence.

### E. APPLICATION

#### 1. Ford's position

Ford began its argument with admissions from Thacker. Ford's Brief, p. 1. It then pointed out that the contracts (referring to the CCA's), sworn testimony and documents demonstrate the parties did not intend to carry on a business for profit. Ford's Brief, p. 3.

It then attempted to refute Snapp's claim that cost savings are profits. During oral argument, Counsel for Snapp was asked if the essence of the partnership was cost savings, argued to be profits. Counsel indicated that it was.

It argued that the relationship lacked any of the usual indicia of partnership, that Snapp's financial records evidence no partnership, and references by Ford to Snapp as a partner were generic, not legal uses of the word.

#### 2. Snapp's position

Snapp best described its position as follows: "Their (referring to Ford and Snapp) primary business was to leverage the Partnership's resources to generate profits through cost savings." Snapp's Brief in Opposition, p. 1. It then identified four alleged flaws in Ford's Brief.

"First, Ford argues that a sharing of cost savings is not a sharing of profits….Second, Ford misrepresents the identity of the Partners in the Partnership. Ford

and Snapp were the Partners…Third, the existence of four, out of thousands, of contracts that the Partners entered into disclaiming the creation of the Partnership is irrelevant to the existence of the Partnership under controlling Michigan law.  Fourth, Snapp relies on the totality of circumstances…"Snapp's Brief in Opposition, pp. 3-4.   Those circumstances included seven factual indicia, which in Snapp's view demonstrated the existence of a partnership. Snapp's Motion, p. 1.  They will be discussed in the next section.

### 3. Opinion of the Special Master

The brilliance and passion of Snapp's advocacy cannot be overlooked, and must be admired, but they obfuscate reality.

#### a. cost savings

It is true the parties were to share cost savings equally.  One half was to be retained by Snapp as "operating profit." 1991 Agreement, Sec. 4.3.  The word profit refers not, however, to the costs savings but to Snapp's one half of those savings.  That is, "operating profit" is Snapp's operating profit, not one half of the profit of a partnership.

Additionally, it has been asserted in oral argument that profits consist of revenue and cost savings.  That is, if one saves costs, one increases profits.  If one enhances revenues, one increases profits.  While this may be true in a general sense, cost savings are savings of costs.  Such may affect profits but do not define profits.

#### b. mutual agency

That Snapp may have been treated differently than other suppliers does not mandate an inference that it was not a supplier.  Moreover, it does not mandate an

inference of a partnership in the face of the evidence to the contrary.  In the CCAs, Snapp was described not as an agent, but as an independent contractor.

### c. joint control

It is here that the logic of Snapp's position is weak.  If in fact the "Partnership" existed to obtain cost savings, it is clear such was in the control of Snapp, not an entity to which Snapp was a partner.  Snapp attempted to obtain cost savings, and was rewarded by keeping one half of them.  Neither Ford nor any entity other than Snapp obtained or was contractually bound to obtain such savings.

### d. capital investments

There was no joint ownership of property.  More to the point, property was owned either by Ford or Snapp.

### e. referral to each other as partner

If <u>Byker</u> has meaning in Michigan jurisprudence, and it does, it first stands for the proposition that the existence or non existence of labels has no importance.

### f. established a name and used the name in public

It is true Snapp used an oval.  It can be inferred such was done to identify with Ford.  However, it is clear that Snapp did hold an important role as Ford's purchasing agent.  However, under <u>Byker</u> analysis, that relationship cannot be defined as a partnership.

It is necessary to discuss the importance of the CCAs.  To Snapp, they are but four of thousands of contracts, all of which define the relationship of the parties.  The merger clauses are described as partial, and they are limited to their subject matter.

To Ford, they form the contractual relationship. The other agreements were contemplated by the CCAs and fall therefore within their parameters.

In the view of the Special Master, Ford's position more accurately describes the legal relationship of the parties. On every occasion on which the parties described their relationship, it was described as one of independent contractors. On every such occasion, the parties said they were not partners.

It is in this context that Justice Markman's use of the word "unimportant" to describe labeling cannot mean irrelevant. In Byker, the parties' stipulated to language that virtually defined the concept of partnership. That language stipulated that the parties shared profits. In Byker, the parties did not on four occasions define their relationship as one of contractors. In Byker, the party who claimed the existence of a partnership at trial was not heard to deny it earlier.

Byker found the existence of a partnership because the parties stipulated to its essence. It found a partnership in a case where the "partners" had never attempted to define the relationship until trial.

The facts in Byker are inapposite. A reasoned application of its principles require the conclusion that no partnership was created by Ford and Snapp.

It is necessary to comment further on the merger clauses in the CCAs. Their interpretation affects other motions to be discussed. The positions of the parties have been described.

It is true that many contracts between the parties were created. It is true that language "relating to the subject matter hereof" is limiting. Those limits however, encompass and define the relationship of the parties. That other contracts were

13

contemplated and created is not the issue. No other contract subsequent to the CCAs altered the relationship of the parties.

It can be argued that under <u>Byker</u> the language about partnership is unimportant if the parties were carrying on a business as co-owners for profit. This may be true as a generality. It is not, however, what occurred in this case. In this case, the parties described themselves in negotiated written agreements as independent contractors, and agreed said contracts contained their entire agreement as to that description. The parties declared they were not partners and agreed said contracts contained the entire agreement as to that declaration.

The actions of the parties was consistent with the actions of a procurement agent and a customer. Even if parts of that relationship were ambiguous, they were not definitive of a partnership.

The merger clause effectively precludes prior inconsistent evidence of partnership. It precludes other prior inconsistent evidence of which will be discussed in other Reports.

## III. CONCLUSION

It is respectfully recommended that the Court find pursuant to the foregoing that no partnership was created by the parties in this case. Therefore, Ford's motion for Summary Judgment on Count I, Partnership, docket no. 221, should be granted. Snapp's motion for Summary Judgment on Count I, Partnership, docket no. 237, should be denied.

Respectfully,

Dated: June 27, 2006

s/ Bryan H. Levy
Bryan H. Levy
Special Master