UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTO INDUSTRIES SUPPLIER
EMPLOYEE STOCK OWNERSHIP
PLAN (ESOP),

    Plaintiff,

v.                                                                                              Case No. 03-74357

SNAPP SYSTEMS, INC.,                                               HONORABLE AVERN COHN

    Defendant/Third-Party Plaintiff,

v.

FORD MOTOR COMPANY, SUSAN E.
KOBET, DIANE SENDEK MARCHESE,
CARMEN ZIRLES, and JEFFREY D.
COLLINS,

    Third-Party Defendants.

_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
REGARDING SNAPP'S RACE DISCRIMINATION CLAIM
AND
GRANTING FORD'S MOTION FOR SUMMARY JUDGMENT**

I.  INTRODUCTION

A.

This is a commercial dispute.  SNAPP is suing Ford and current and former Ford employees for acts arising out of their business relationship.  The relationship began in 1991 and ended in 1999.  Briefly, SNAPP, a minority contractor, initially supplied computer software to Ford which SNAPP purchased direct from manufacturers and then

sell to Ford.  As the parties' relationship evolved, SNAPP also supplied Ford with "industrial materials," also called "low end commodities," such as safety equipment. The parties purchasing arrangement was memorialized in several written agreements and, according to SNAPP, some oral agreements.

SNAPP's First Amended Third Party Complaint asserts thirteen (13) claims, one of which is race discrimination.  The parties filed several dispositive motions which the Court referred to Special Masters for reports and recommendations (R&R).  The parties objected to many of the R&Rs.  A hearing on the parties' objections to the R&Rs was held on November 13, 2006.  This Order relates only to SNAPP's race discrimination claim.

Broadly stated, SNAPP claims that Ford treated it differently than other non-minority suppliers, that Ford did not have a legitimate business reason for not renewing the parties' relationship and any reason for not renewing was pretextual.  Ford filed a motion for summary judgment on the grounds that SNAPP failed to make out a prima facie case of race discrimination or that its reason for non-renewal was a pretext for discrimination.  The Special Master recommends that the motion be granted.  SNAPP objects.  For the reasons that follow, the Court agrees with the Special Master.

## II.  LEGAL STANDARDS

### A.

Under Fed. R. Civ. P. 53(g), the Court reviews the objections to the Special Master's findings of fact and conclusions of law <u>de novo</u>.

### B.

Summary judgment will be granted when the moving party demonstrates that

there is "no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Telxon Corp. v. Federal Inc. Co., 309 F.3d 386, 391 (6th Cir. 2002).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." Wexler v. White's Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The Court will view "the evidence in the light most favorable to the nonmoving party and decide if it was sufficient to raise a genuine issue of material fact for the jury." Preferred Properties, Inc. v. Indian River Estates, Inc., 276 F.3d 790, 799 (6th Cir. 2002) (quoting EEOC v. Harbert-Yeargin, Ind., 263 F.3d 498. 510 (6th Cir. 2001)). Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

C.

Where, as here, there is no direct evidence of racial discrimination, a plaintiff may prove a prima facie case of race discrimination by showing that (1) he is a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated members outside the protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

In the context of a refusal-to-contract, as is alleged here, the last element of the prima facie case requires proof that "the services remained available or were awarded to others outside the protected class." PAS Comm'n v. Sprint Corp., 139 F. Supp. 2d 1149, 1167-68 (D. Kan. 2001).

If a plaintiff establishes a prima facie case, then burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. McDonnell Douglas, 411 U.S. at 802. If the defendant does so, the plaintiff must then show that the articulated reason is a mere pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The burden of persuasion in discrimination cases remains at all times with the plaintiff. Burdine, 450 U.S. at 254-55.

### III.  ANALYSIS

SNAPP says that the Special Master did not properly apply the McDonnell Douglas test to its claim in that the Special Master raised its burden of proof by requiring SNAPP to offer direct evidence of discriminatory intent. This argument lacks merit.

The Special Master found that SNAPP failed to produce sufficient evidence to give rise to an inference of discrimination because SNAPP did not have any evidence to support its contention that other similarly situated non-minority suppliers were treated differently than SNAPP with respect to the same or similar conduct. In other words, the Special Master found that SNAPP failed to make out a prima facie case because it failed to produce evidence as to the similarly situated prong. This was a correct application of the McDonnell Douglas test to SNAPP's claim.

Moreover, as explained by the Special Master and by Ford in its response to SNAPP's objections, there is simply no evidence that Ford treated SNAPP differently

4

that any other similarly situated non-minority supplier.  Indeed, after the Ford-SNAPP relationship ended, there was no contract from Ford to any supplier, minority or majority, to provide the same services that SNAPP provided to Ford.  Ford instead moved purchasing services back in-house and no supplier provided the same services SNAPP had provided.

SNAPP, however, says that it became aware of many majority suppliers during its nine-year relationship with Ford, and that it treated those suppliers more favorably than SNAPP and has "compiled data" to support its assertion.  As Ford points out, however, these majority suppliers, which SNAPP says number about 3,000, were suppliers that SNAPP managed and were tier two suppliers and not similarly situated to SNAPP.  As Ford states "[t]he fact that those alleged suppliers were majority suppliers is wholly irrelevant because those suppliers provided only the products or items that SNAPP ultimately resold to Ford.  Those suppliers did not provide purchasing functions or outsourced procurement services as SNAPP did."

Put simply, this is not a civil rights case.  It is a commercial dispute.

The R&R of the Special Master is ADOPTED.  Ford's motion for summary judgment is GRANTED.  Count XIII is DISMISSED.

SO ORDERED.


Dated:  December 12, 2006                s/Avern Cohn
                                         AVERN COHN
                                         UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 12, 2006, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                         Case Manager, (313) 234-5160

5