UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AUTO INDUSTRIES SUPPLIER
EMPLOYEE STOCK OWNERSHIP
PLAN (ESOP),

      Plaintiff,

v.                                                                           Case No. 03-74357

SNAPP SYSTEMS, INC.,                              HONORABLE AVERN COHN

      Defendant/Third-Party Plaintiff,

v.

FORD MOTOR COMPANY, SUSAN E.
KOBET, DIANE SENDEK MARCHESE,
CARMEN ZIRLES, and JEFFREY D.
COLLINS,

      Third-Party Defendants.

_____/

## OPINION AND ORDER REGARDING REPORTS AND RECOMMENDATIONS OF THE SPECIAL MASTERS ON THE PARTIES' DISPOSITIVE MOTIONS

### I.  INTRODUCTION

#### A.

      This is a commercial dispute.  SNAPP is suing Ford and current and former Ford

employees for acts arising out of their business relationship.  The relationship began in

1991 and ended in 1999.  Briefly, SNAPP, a minority contractor, initially supplied

computer software to Ford which SNAPP purchased direct from manufacturers and then

sell to Ford.  As the parties' relationship evolved, SNAPP also supplied Ford with

1

"industrial materials," also called "low end commodities," such as safety equipment. The parties purchasing arrangement was memorialized in several written agreements and, according to SNAPP, some oral agreements.

SNAPP's First Amended Third Party Complaint makes the following claims:

| | |
|---|---|
| Count I | **Breach of Partnership, Fiduciary Duties and Accounting** |
| Count II | **Breach of Contract** |
| Count III | **Quantum Meriut and Unjust Enrichment** |
| Count IV | **Promissory Estoppel** |
| Count V | **Fraud** |
| Count VI | **Fraud by Omission** (Silent Fraud) |
| Count VII | **Federal Antitrust Laws Violations** |
| Count VIII | **Michigan Antitrust Law Violations** |
| Count IX | **Violation of Michigan Uniform Trade Secrets Act** |
| Count X | **Conversion** |
| Count XI | **Violation of Michigan Sales Representative Commission Act** |
| Count XII | **Tortious Interference** |
| Count XIII | **Race Discrimination** |

The parties filed several dispositive motions which the Court referred to Special Masters Bryan Levy and Stephen Caulkins for reports and recommendations (R&R). The parties objected to many of the recommendations.  A hearing on the parties' objections to the R&Rs was held on November 13, 2006.

This Opinion and Order reflects the Court's decision on the several motions referred to the Special Masters for R&Rs to which the parties filed objections[1] with the exception of the motion on Count XIII, race discrimination, is the subject of a separate order.  The Court will address the objections in the manner presented by the parties' Joint Report Regarding the Objections to the Special Masters' Reports and

---

[1]As to the two R&Rs to which there were no objections, the Court will enter a separate order adopting them and disposing of the motions to which they pertained.

Recommendations and Proposed Order of Oral Argument.

Before proceeding to a decision on the various motions,[2] the Court makes the

following rulings.  First, liability and damages are BIFURCATED.  Second, Ford's

counter-claim is BIFURCATED.

## II.  STANDARD OF REVIEW

Fed. R. Civ. P. 53 sets forth the appropriate standard of review of the findings of

---

[2]Although the Court's ruling on the various motions may appear truncated, the Court is fully familiar with the extensive record and the parties' respective positions. Dealing with the motions was no easy task.  Much of the volume of paper the Court had to consider is the result of SNAPP grossly over-pleading this case and the inevitable flood of dispositive motions the excessive pleading engendered.

Notable also, consistent with the Court's requirements for summary judgment, the parties filed papers purporting to set forth material facts not in dispute and material facts over which there is a genuine dispute.  Traditionally, this scope of the factual dispute enables the Court to determine the factual issues for trial, i.e. which facts are material to the underlying dispute requiring resolution by a trier of fact.  The record contains three such papers which purport to relate to all of the outstanding dispositive motions:

1.     Ford's Statement of Material Facts, filed September 30, 2005
2.     SNAPP's Counter-Statement of Material Facts and Statement of Material Facts, filed December 5, 2005
3.     SNAPP's Supplemental Counterstatement of Material Facts and SNAPP's Supplemental Statement of Facts, filed December 21, 2005.

Several observations are pertinent to these filings:

1.     None of these papers contain a table of contents.  Given their length, as will be described, without a table of contents, there is no way to comprehend the factual development of the relationship of the parties.
2.     The three papers are extraordinarily lengthy.  Ford's paper runs 47 pages and is divided into 17 paragraphs, each paragraph containing a multitude of sub-paragraphs, many of which list irrelevant facts
3.     The follow-up by SNAPP is 114 pages.  The first part, pages 1-80, correlates to Ford's statement.  The second part, pages 81-114, purports to describe material facts undisputed in numbered paragraphs and multiple subparagraphs.
4.     SNAPP's response contains no discussion, much less any reference to, A) the individual defendants, B) discrimination by Ford, C) damages, i.e. the total amount of money it seeks.

fact and conclusions of law made or recommended by a Special Master.  Rule 53(g)

provides as follows:

> (3) Fact Findings. The court must decide de novo all objections to findings of fact made or recommended by a master unless the parties stipulate with the court's consent that:
> (A) the master's findings will be reviewed for clear error, or
> (B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.
> (4) Legal Conclusions. The court must decide de novo all objections to conclusions of law made or recommended by a master.

The parties have not stipulated to make the Special Masters' factual findings final or

reviewable only for clear error.  Accordingly, under Rule 53(g) the Court must decide the

parties' objections to the Special Masters' findings of fact and conclusions of law in the

R&Rs de novo.[3]

### III.  PARTNERSHIP MOTIONS

#### A.

SNAPP claims that it had a partnership with Ford.  This is the subject of Count I

of the complaint.  The parties filed cross motions for summary judgment on Count I.

The Special Master recommends that Ford's motion be granted and SNAPP's motion

be denied.  SNAPP filed objections.  The Court agrees with the Special Master.  The

reasons follow.

#### B.

Whether a partnership exists is a question of fact.  See Miller v. City Bank &

Trust Co., 82 Mich. App 120, 123 (1978).  A partnership is "a voluntary association of

---

[3]Each R&R set forth the appropriate legal standard for a motion for summary judgment or a motion to dismiss, depending on the nature of the motions.  There is no need to repeat those legal standards.

two or more persons ⋯ to carry on as co-owners a business for profit."  M.C.L.A. §

449.6  Profit sharing is prima facie evidence of a partnership that can be rebutted.  See

M.C.L.A. § 449.7 (4)(b).  The Michigan Supreme Court has held that whether a

partnership exists depends on the parties' intent to jointly carry on a business for profit,

not on their intent to form a partnership.  When there is no express agreement, the

parties' conduct determines whether a partnership exists.  Byker v. Mannes, 465 Mich.

637, 638-639, 648 (2002).  See also Kilbourne v. Kilbourne, 2003 WL 21977234 (Mich.

App. Aug. 19, 2003) (unpublished).

Ford maintains that the parties various contracts, sworn testimony, and

documents demonstrated that the parties did not intend to carry on a business for profit,

an essential element of a partnership.  Ford relies heavily on the integration (merger)

clauses in the various agreement which is says legally preclude finding the existence of

a partnership.

SNAPP maintains that the essence of the partnership was cost savings, argued

to be profits.  Thus, under Byker, the parties intended to operate as a partnership.

The Special Master found that the evidence showed that the parties had a

contractual relationship, not a partnership relationship.  The Special Master analyzed

the elements of a partnership and concluded that "the actions of the parties was

consistent with the actions of a procurement agent and a customer.  Even if parts of the

relationship were ambiguous, they were not definitive of a partnership."

SNAPP objects.  SNAPP makes the same arguments it did before the Special

Master.  That is, that the sharing of cost savings can establish a business relationship

for profit, i.e. that cost savings equals profit sharing.

5

The record is clear that the parties did not have or intend to have a partnership. Their relationship was clearly contractual.  Indeed, to adopt SNAPP's theory that an agreement to save costs equals an agreement to share profits, thereby creating a partnership, would turn the essence of a vendor/vendee relationship on its head.

As such, the findings and conclusions of the Special Master are adopted as the findings and conclusions of the Court.  Ford's motion for summary judgment is GRANTED.  SNAPP's motion is DENIED.  Count I is DISMISSED.

IV.  TRADE SECRETS AND TORTS MOTIONS

A.

These motions encompass the following counts:

| | |
|---|---|
| Count IX | **Violation of Michigan Uniform Trade Secrets Act** |
| Count X | **Conversion** |
| Count XI | **Violation of Michigan Sales Representative Commission Act** |
| Count XII | **Tortious Interference** |

Broadly stated, SNAPP says that in the course of carrying out its business with Ford, in providing IP Services, it created and developed unique information which it calls "the SNAPP system" and says constitutes protected trade secrets material.  It says that Ford disclosed the SNAPP system to third parties and otherwise misappropriate it.  This is the subject of Counts IX, X, and XI.

As to tortious interference, SNAPP says that Ford intentionally induced suppliers to abandon their contractual relationships, business relationships and expectancies with SNAPP.  This is the subject of Count XII.

Ford filed a motion for summary judgment on Counts IX, X and XII.  Ford filed a

6

motion to dismiss Count XI.  The Special Master recommended[4] that

> 1.  Ford's motion on Count IX (trade secrets) be granted in part and denied in part.  The Special Master found that the "common law misappropriation aspect of this count is viable"
>
> 2.  Ford's motion on Count X (conversion) be granted.
>
> 3.  Ford's motion on Count XI (sales act) be granted.
>
> 4.  Ford's motion on Count XII (tortious interference) be denied.

Both parties filed objections to the R&R.  As will be explained, the R&R will be adopted in part and rejected in part.  Ford's motion on Counts IX, X, and XI will be granted. Ford's motion on Count XII will be denied.

B.

1.

The Special Master found that the statutory trade secrets claim fails because SNAPP's secrecy argument was based on the existence of a partnership, which would give Ford the obligation to maintain secrecy.  Because the Special Master has rejected the partnership claim, the Special Master concluded that the statutory claim must also fail.

However, the Special Master found that SNAPP made out a common law trade secrets claim, relying on <u>McKesson Medical-Surgical, Inc. v. Micro Bio-Medics, Inc.</u>, 266 F. Supp. 2d 590 (E.D. Mich. 2003).

As to the conversion claim, the Special Master found that because SNAPP could

---

[4]The parties say that they agreed these motions would be heard by Special Master Caulkins, not Levy.  The fact that they were heard before Special Master Levy and not Caulkins is irrelevant given that the Court reviews the R&Rs <u>de novo</u>.

7

not identify any property allegedly converted except by reference to the partnership, this claim failed in light of finding no partnership existed.

As to the sales representative act claim, the Special Master found that the evidence shows that SNAPP was a "purchasing agent" not a "sales agent" and therefore the acts does not apply.  Thus, Ford's motion to dismiss should be granted.

As to the tortious interference claim, the Special Master found that the claim encompasses findings of "legitimacy" "unjustified" "malice" and "improper" which are issues best left to a jury.

2.

Ford objects to the Special Master's finding that SNAPP can assert a common law misappropriation claim.  Ford says that SNAPP never plead such a claim, the only claim plead is a statutory claim under Michigan's Uniform Trade Secrets Act.  Ford says the Special Master did not have the authority to transform the statutory claim into a common law claim, which SNAPP had ample time to have asserted in this case. Moreover, Ford says that a common law trade secrets claim fails for the same reasons that the statutory claim fails - SNAPP did not maintain the secrecy of the alleged trade secrets or confidential business information at issue, SNAPP did not own the alleged confidential business information, and SNAPP failed to present any evidence that Ford actually misappropriated its alleged business information.

Ford does not object to the Special Master's recommendation that SNAPP's tortious interference claim must go to trial.

SNAPP objects to the Special Master's ruling on the trade secrets claims without affording oral argument.  SNAPP also says that the Special Master erred in limiting the

8

scope of its trade secrets claims.  It says that its trade secrets claims stand independent of the partnership in that SNAPP "reasonably imposes trust and confidence in Ford." The partnership was not the only avenue to finding Ford had a duty to maintain secrecy.

3.

As to Count IX, violation of trade secrets, SNAPP clearly plead a statutory, not a common law, trade secrets claim.  The Special Master erred in relying on McKesson, supra, because, despite SNAPP's protestations to the contrary, there is nothing in the complaint which can be construed as common law trade secret claim within the confines of McKesson.  McKesson suggests that a common law trade secrets claim lies where there is some contractual agreement to maintain confidentiality.  Here, however, there is no evidence of any contractual arrangement regarding confidentiality.  Thus, SNAPP cannot bring a common law trade secrets claim.

SNAPP's statutory trade secrets claim fails because SNAPP has failed to identify any trade secrets.  As seen from Ford's Exhibit 6 - SNAPP's Answers to Interrogatories, and Ford's Exhibit 165 - Buckley's deposition, none of the information SNAPP alleges to have been protected as a trade secret, to the extent such information was even identified, was unique or otherwise rising to the level of a trade secret.

As to Count X, conversion, the Court adopts the Special Master's recommendation for the reasons stated in the R&R.  No further discussion is necessary.

As to Count XI, violation of the Michigan Representative Sales Act, this claim fails because there is no evidence that SNAPP was anything other than a purchasing

9

agent, not a sales agent, for Ford.  SNAPP therefore cannot maintain a claim for violation of the sales representative act.

Overall, the R&R is ADOPTED IN PART AND REJECTED IN PART:

1.  Ford's motion on Count IX (trade secrets) is GRANTED;

2.  Ford's motion on Count X (conversion) is GRANTED;

3.  Ford's motion on Count XI (sales act) is GRANTED;

4.  Ford's motion on Count XII (tortious interference) is DENIED.

Counts IX, X, and XI are DISMISSED.

## V.  FRAUD AND EQUITABLE REMEDIES MOTIONS

### A.

These motions relate the following claims:

Count III     **Quantum Meriut and Unjust Enrichment**
Count IV      **Promissory Estoppel**
Count V       **Fraud**
Count VI      **Fraud by Omission** (Silent Fraud)

Broadly stated, as to its unjust enrichment claim, SNAPP says that Ford required SNAPP to provide it with significant services and incur additional expenses outside the scope of the express contracts which included, but are not limited to, "dedicated administrative support personnel, strategic program support, bilingual personnel, export logistics, delivery follow-up, equipment financing, pre-sales support, out of scope commodity analysis and warehousing."  SNAPP says Ford did not fully compensate SNAPP for these additional services.

As to the promissory estoppel claim, SNAPP says that Ford made promises regarding minimum revenues on which SNAPP relied.

10

As to its fraud claims, SNAPP says that Ford made false representations regarding many things including promises as to revenue amounts (including the 2% operating profit), payment frauds, frauds to steal trade secrets, frauds as to accurate accounting and frauds as to adjusting the business model.

Ford filed motions for summary judgment on all these claims. The Special Master recommended that:

1. Ford's motion for summary judgment on Count III (unjust enrichment) be granted in part and denied in part;

2. Ford's motion for summary judgment on Count IV (promissory estoppel) be granted in part and denied in part;

3. Ford's motion for summary judgment on Count V and VI (fraud) be granted.

Both parties filed objections.

B.

As to SNAPP's claims under Counts III and IV, the Special Master found that "additional evidence may be required on the sole issue of whether the

additional services for which damages are sought on Counts III and IV are within or outside the CCA's [parties contracts]

The Court disagrees with the Special Master that SNAPP can make out quasi contract claims for so called "additional services" outside of the parties' written contracts. They cannot. Any additional work to be performed by SNAPP was discussed within the confines of paragraphs 1.1, 9.1. and 9.2 of the 1996 contract. If a purchase order did not issue, SNAPP was not to do anything. Everything defining the relationship of the parties is reflected in the contracts and purchase orders. SNAPP's claims for additional services must rise and fall based on the written agreements and be

11

the subject of contract claims, not quasi contract claims.  Thus, Counts III ad IV must be dismissed.

As to SNAPP's claims under Counts V and IV, the Special Master found that SNAPP's claims sound in contract and therefore it cannot also have fraud claims and that the contracts (CCAs) have integration clauses which bar fraud claims, and the fraud claims are barred by the statute of limitations.  In its objections, SNAPP makes the same arguments presented to the Special Master – that its fraud claims can coexist with its contract claims.  This argument lacks merit.  SNAPP confuses the alternative pleading concept with the concept that where a fraud claim is based on the parties alleged failure to comply with a contractual duty, the proper cause of action is breach of contract, not fraud.  SNAPP's allegations of fraud, which stem primarily from an alleged $200 million revenue commitment, an alleged 2% operating profit, and an alleged promise regarding prompt payment, relate to, or are based on, contractual duties encompassed by the express provisions of the parties written contracts.

As such, the R&R is ADOPTED IN PART AND REJECTED IN PART:

1.  Ford's motion for summary judgment on Count III (unjust enrichment) is GRANTED;

2.  Ford's motion for summary judgment on Count IV (promissory estoppel) is GRANTED;

3.  Ford's motion for summary judgment on Count V and VI (fraud) is GRANTED.

Counts III, IV, V, and VI are DISMISSED.

## VI.  DISCRIMINATION MOTION

This motion is the subject of a separate order.

## VII.  STATUTE OF LIMITATIONS MOTIONS

12

A.

These motions relate to Count I - partnership, Count XII - tortious interference, Count XIII - race discrimination, Count II - breach of contract, Count III - unjust enrichment, Count IV - promissory estoppel, Count V - fraud, and Count VI - silent fraud

Ford filed a motion for <u>partial</u> dismissal of Counts I, XII-XIII as barred by the statute of limitations and a motion for <u>partial</u> dismissal of Counts II-VI as barred by the statute of limitations and failure to state a claim

The Special Master recommended that:

> 1.  The motion as to Count I (partnership) is moot in light of recommending that summary judgment be granted in Ford's favor;
>
> 2.  The motion as to Count XII (tortious interference) should be denied;
>
> 3.  The motion as to Count XIII (race discrimination) should be denied;
>
> 4.  The motion as to Count II (breach of contract) should be denied;
>
> 5.  As to Counts III, IV, V, VI, and X, the motion should be deemed moot in light of recommending that summary judgment be granted in Ford's favor;

Both parties filed objections.

B.

1.

Ford objects only to the R&R as to SNAPP's contract claim on Count II.  Ford says that SNAPP's breach of contract claim accrued for statute of limitations purposes at the time of the alleged wrong, i.e. at the time Ford allegedly failed to perform under the alleged contracts.  Under this standard, all of SNAPP's claims predating September 23, 1996 are barred by the six year statute of limitations.

13

The Special Master found a genuine issue of material fact existed with respect to whether SNAPP's breach of contract claims are based on an "open and mutual account" and if so, "when the final activity occurred with respect to that account."  Under this analysis, SNAPP's claims would not accrue until "the time of the last item proved in the account" rather than at the time of the alleged wrong."

Ford says there is no factual dispute as to whether a mutual and open account existed.

SNAPP objects to the Special Master's findings on a limited basis.  SNAPP says that "the Court should adopt the Special Master's recommendation, but not his individual rulings rejecting SNAPP's independent defenses."  These rulings were that (1) the discovery rule does not apply to SNAPP's claims, and (2) that the Joint Defense Agreement (which SNAPP calls the standstill agreement) does not toll the statute of limitations."

2.

Most of Ford's motions are moot in light of the summary judgment rulings.  To the extent that any statute of limitations question remains, it will be reserved for consideration after the filing of the joint final pretrial statement.  The Court does however, disagree with the Special Master as to whether a mutual and open account exists.  This is a reconciliation case, not a mutual and open account case.  How far back SNAPP can go in reconciliation requires a damage calculation.

For docket efficiency, Ford's motions are DENIED AS MOOT.

VIII.  CONTRACT MOTION

A.

14

This motion relates to SNAPP's breach of contract claim under Count II.  It specifically relates to SNAPP's claim of <u>oral</u> contracts.

Ford's filed a motion for partial summary judgment on Count II.  Fords seeks summary judgment on the grounds that all alleged breaches which pre-date September 23, 1996 are barred by the statute of limitations.  Ford also says that the integration clauses of the contracts bar evidence of alleged oral promises prior to the execution of the contracts and seeks summary judgment on this ground.

The Special Master recommended that the motion be denied.  The Special Master found that because there is a factual dispute as to whether an open account existed, the statute of limitations does not bar the contract claims.  The Special Master also found that the integration clauses in the contracts do not require dismissal of the contract claims and that "there is ample evidence after the execution of the [contracts] which support prior oral promises."

Ford objects.

B.

Ford objects to the finding that SNAPP's breach of contract claim as to oral promises can go forward.  Ford says that this claim is barred by the integration clauses. Ford also objects to the Special Master's finding that a question of fact exists with respect to whether Ford re-affirmed the alleged oral promises subsequent to entering into the written contracts, thereby precluding summary judgment in favor of Ford.

The Court agrees with Ford.  The integration clauses clearly bar any claim based on oral contracts.  SNAPP's reliance on <u>Carlson v. Hallinan</u>, 2006 WL 771722 (De. Ch. Mar. 21, 2006) is unavailing.  <u>Carlson</u> dealt with a contract that was not completely

15

integrated, as reflected by the intent of the parties.  That is not the case here.  The contracts were fully integrated as clearly evidenced by the integration clauses.

As such, the R&R is ADOPTED IN PART AND REJECTED IN PART.  Ford's motion is GRANTED with respect to SNAPP's claim of oral contracts and DENIED AS MOOT as to the statute of limitations.

IX.  AGREEMENT DATED OCTOBER 1, 1999

A.

These motions relate to the proper construction of portions of the 1999 Agreement regarding the correct methodology in calculating the 2% operating profit.  This is reflected in paragraph 1.7(b) of the October 1, 1999 Agreement, commonly referred to as the Transition Agreement.  They also relate to Ford's right to cancel purchase orders.

There are four motions, as follows:

SNAPP's Motion for Summary Judgment that it used the correct methodology in calculating the 2% operating profit;

Ford's Cross Motion for Summary Judgment regarding the methodology;

SNAPP's Motion for Summary Judgment that Ford breached the 1999 Agreement by canceling purchase orders upon expiration of the Agreement;

Ford's Cross Motion for Summary Judgment regarding cancelling purchase orders;

The Special Master recommended that SNAPP's Motion regarding the correct methodology be granted and Ford's cross motion be denied.  He also recommended that SNAPP's motion for summary judgment regarding cancelling purchase orders denied and Ford's cross motion be granted.

Both parties filed objections.

16

B.

Ford objects to the recommendation regarding the 2% methodology.  Ford says that its interpretation of the calculation of the 2% operating profit is correct.  At a minimum, Ford says that there are two interpretations which raises a question of fact.  The Court agrees.  The parties cross motions will be denied.  As explained at the hearing, the Court will wait until the joint final pretrial statement is submitted together with the parties proposed verdict form and jury instructions.

SNAPP objects to the recommendation regarding cancelling purchase orders.  SNAPP says that it should be compensated for cancelled purchase orders.  SNAPP's objection relates to the separate and distinct issue of whether, and to what extent, SNAPP should be compensated for the cancelled transactions under the 1999 Agreement.  The motions before the Court address only the issue of whether Ford had the right to cancel and reissue the subject purchase orders.  The issue of SNAPP's right to compensation was not raised in the motions.  The Special Master correctly found that Ford did not breach the 1999 Agreement by cancelling purchase orders.  SNAPP's right to compensation is another matter.

As such, the R&R is ADOPTED IN PART AND REJECTED IN PART:

SNAPP's Motion for Summary Judgment that it used the correct methodology in calculating the 2% operating profit is DENIED;

Ford's Cross Motion for Summary Judgment regarding the methodology is DENIED;

SNAPP's Motion for Summary Judgment that Ford breached the 1999 Agreement by canceling purchase orders upon expiration of the Agreement is DENIED;

Ford's Cross Motion for Summary Judgment regarding cancelling purchase

17

orders is GRANTED.

## X.  ANTITRUST MOTIONS

### A.

SNAPP claims that Ford violated state and federal anti trust laws in its

relationship with SNAPP.  This is the subject of Counts VII (federal) and VIII (state).

There are four motions regarding the anti-trust claims:

Ford's Motion for Partial Dismissal of SNAPP's Antitrust Claims as Barred by
the Statute of Limitations;

Ford's Motion to Dismiss SNAPP's Antitrust Claims for Failure to State a Claim;

Ford's Motion for Summary Judgment on SNAPP's Antitrust Claims;

SNAPP's Motion for Partial Summary Judgment that Ford Boycotted SNAPP
from the Relevant Market.

The Special Master recommended that Ford's motion for summary judgment be

GRANTED and SNAPP's motion be DENIED.  Ford's motions to dismiss are subsumed

in the summary judgment motion.

SNAPP filed objections.

### B.

The Court has read the R&R.  It fully sets forth in detail all of the reasons why

SNAPP has not made out an anti-trust claim.  No useful purpose would be served by

elaborating on the R&R.

As such, the R&R is ADOPTED as the findings and conclusion of the Court.

Ford's Motion for Partial Dismissal of SNAPP's Antitrust Claims as Barred by
the Statute of Limitations is DENIED AS MOOT;

Ford's Motion to Dismiss SNAPP's Antitrust Claims for Failure to State a Claim is
DENIED AS MOOT;

18

Ford's Motion for Summary Judgment on SNAPP's Antitrust Claims is
GRANTED;

SNAPP's Motion for Partial Summary Judgment that Ford Boycotted SNAPP
from the Relevant Market is DENIED.

### XI.  CONCLUSION

After all the complicated motion practice, the following claims continue:

Count II         **Breach of Contract - written contracts only**
Count XII        **Tortious Interference**
Count XIII       **Race Discrimination**[5]

SO ORDERED.


    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  December 12, 2006


I hereby certify that a copy of the foregoing document was mailed to the parties of
record on this date, December 12, 2006, by electronic and/or ordinary mail.


    s/Julie Owens
Case Manager, (313) 234-5160

---

[5]As noted above, this claim is the subject of a separate order.