UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTO INDUSTRIES SUPPLIER
EMPLOYEE STOCK OWNERSHIP
PLAN (ESOP),

  Plaintiff,

v.                                                                Case No. 03-74357

SNAPP SYSTEMS, INC.,                    HONORABLE AVERN COHN

  Defendant/Third-Party Plaintiff/Counter-Defendant,

v.

FORD MOTOR COMPANY, a Delaware corporation,

  Third-Party Defendant/Counter-Plaintiff.

_____/

## **DECISION AND ORDER DISMISSING SNAPP'S TORTIOUS INTERFERENCE CLAIM**

### I.

### A.

This is a complex commercial dispute. Its background and the relationship of the parties is reflected in the:

- Memorandum and Order Granting In Part Third-Party Defendant's Motion to Dismiss entered September 21, 2004;

- Opinion and Order Regarding Report and Recommendation of the Special Master on Parties' Dispositive Motions entered December 12, 2006;

- Opinion and Order Adopting Report and Recommendations Regarding SNAPP's Race Discrimination Claims and Granting Ford's Motor for Summary Judgment entered December 12, 2006; and

- The Joint Final Pretrial Order Pretrial Order, Section IV, Stipulation of Facts filed April 30, 2007.

Now before the Court for decision is

> Third-Party Defendant Ford Motor Company's Motion for Summary Judgment on Count XII, SNAPP's Tortious Interference Claim, and Partial Summary Judgment on Count II, SNAPP's Breach of Contract Claim as Barred by the Statute of Limitations, filed March 26, 2007.

For the reasons stated on the record on June 13, 2007, and for the further reasons which follow, the motion relating to SNAPP's claim of tortious interference is GRANTED and this claim is DISMISSED.

Consideration of the motion as it relates to the statute of limitations is DEFERRED until SNAPP has fully fleshed-out its damages claim as required by Order Vacating Order of Bifurcation and Requiring Additional Proffers, filed May 21, 2007.

**B.**

SNAPP's tortious interference claim is based on the assertion that Ford interfered with SNAPP's business relationships with General Motors Corporation and with Covisint.

The nature and scope of General Motor's operations is well-known and needs no elaboration.

Covisint was a joint venture. Its intended operations are best described in the Federal Trade Commission news release closing an investigation regarding possible violations of the Clayton Act as follows:

2

> . . . [Covisint] plans to operate an internet-based business-to-business exchange providing services for firms in the automotive industry supply chain. The venture's core offerings will include services to assist in product design, supply chain management and procurement functions performed by auto manufacturers and their direct and indirect suppliers.
>
> The firms intending to form Covisint are five automotive manufacturers – General Motors Corp., Ford Motor Co., DaimlerChrysler AG, Renault SA, and Nissan Motor Co. Ltd. – and two information technology firms – Commerce One, Inc. and Oracle Corporation. The auto manufacturers involved in founding the planned venture account for roughly one-half of total worldwide auto production.

See http://www.ftc.gov/opa/2000/09/covisint.shtm.

## II.

### A.

The rules governing summary judgment are well-known and need no elaboration.

### B.

The law on tortious interference is also well-known and needs only a brief recital:

> The elements of a claim for tortious interference with a contract or advantageous business relationship or expectancy are as follows: (1) the plaintiff's contract or business relationship or expectancy must be with a third party; (2) the defendant must have knowledge of the contract or the business relationship or expectancy; (3) there must be intentional and improper interference by the defendant, inducing or causing a breach, disruption, or termination of the contract or the business relationship or expectancy; and (4) there must be resultant damage to the party whose contract or business relationship or expectancy has been breached, disrupted or terminated. See, Jim-Bob, Inc. v. Mehling, 178 Mich.App. 71, 443 N.W.2d 451 (1989).

Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, 261 F. Supp. 2d. 837, 850 (E.D. Mich. 2003).

3

## III.

### A.

The following are the essential material facts over which there is no disagreement and which entitle Ford to summary judgment on the tortious interference claim.[1]

1. In late December 1999, Ford and SNAPP's contractual relationship ended. After that time, there was a wrap-up of the work SNAPP did for Ford. The wrap-up extended through 2000 and into 2001. Importantly, no new work was done by SNAPP for Ford after December 31, 1999.

2. Early in March of 1999, Direct Sourcing Solutions, Inc. (Direct Sourcing) was formed by the owner of SNAPP to do contract work for GM. Direct Sourcing did contract work for GM through 2003.

3. In December 1999, SNAPP sold Direct Sourcing all the software and all related documents developed by SNAPP for use in administering the Ford resale program developed by SNAPP for Ford. Also at the end of 1999, SNAPP sold all its computers and furniture to Direct Sourcing. In February 2000, SNAPP sold all its assets, information, and data "necessary operate a purchasing service business as operated by SNAPP as of December 31, 1999, together with all related documentation," to Direct Sourcing. By then, SNAPP was no longer in business except to wind up the contracts it made on behalf of Ford prior to the end of 1999, i.e the wrap-up.

---

[1] For the most part, these facts are supported by the Timeline of Events Related to SNAPP's Tortious Interference Claims and Support in Record and the accompanying exhibits, filed June 7, 2007 (docket entry # 495) as well as the colloquial on the record on June 13, 2007.

4. In January 2000, the president of SNAPP announced that it was time to fully transition to Direct Sourcing as the company providing products to GM and that "all GM business will be done in the name of and through Direct Sourcing Solutions, Inc." and that the company would be used only for GM.

**B.**

1. In February 2000, the formation of Covisint was publicly announced. Covisint was formally incorporated on December 8, 2000 and began operations on January 1, 2001. Covisint was not a success.

2. On August 30, 2000, in a Supplemental Memorandum of Understanding, the members of Covisint agreed as follows:

> Covisint (and the OEMs, either individually or collectively) will not enter into any oral or written agreement with any actual or prospective Covisint customer that is a direct or indirect supplier, where the terms of such agreement (I) obligate such customer to use Covisint as its "exclusive" or "primary" exchange; (ii) prohibit such customer from entering into an equity or revenue sharing relationship or a long-term agreement with any other electronic exchange; (iii) otherwise restrict or limit the customer's choice to access, use, participate in, organize or establish an electronic exchange other than Covisint; or (iv) obligate such customer to agree to use the Covisint exchange for a period longer than eighteen (18) months.

3. In September 2000, Alice Miles of Ford and Raymond Pollard of GM, both of whom were working on putting Covisint into operation, had a conversation in which Pollard suggested that Direct Sourcing be utilized by Covisint. The suggestion was rejected by Miles because she said that Ford had an ongoing dispute with SNAPP.

4. The Miles/Pollard discussion came to the attention of Direct Sourcing. On October 2, 2000, Direct Sourcing wrote Ford stating that Direct Sourcing and SNAPP were

different companies "with no commonality of ownerships," and that Direct Sourcing had no claim against Ford and desired to provide services to Covisint.

5. There is nothing in the record relating to Covisint's operations.

**IV.**

Based upon the record, including the above facts, viewed in a light most favorable to SNAPP, the following conclusions can be drawn:

1. There is no evidence in the record of SNAPP attempting to do business or doing business with GM after January 1, 2000 when Direct Sourcing began doing business with GM. There is no evidence in the record of activity on the part of Ford in any way attempting to interfere or interfering with SNAPP doing business with GM.

2. There is no evidence in the record of SNAPP attempting to do business or in any way doing business with Covisint after January 1, 2001 - when Covisint began operations. Also, there is no evidence that SNAPP was in the position to do business with Covisint after January 1, 2001. There is no evidence in the record that Covisint ever considered or engaged in the type of business which SNAPP performed for Ford in the years SNAPP was active with Ford or that Covisint ever considered SNAPP as a vendor.

**V.**

SNAPP's tortious interference claim has consumed substantially more lawyer and judicial resources than is reflected in this brief decision. The excessiveness of the resources devoted to the claim was occasioned by SNAPP's shotgun approach and Ford's response in-like manner. Ford's instant motion is the second summary judgment motion regarding SNAPP's tortious interference claim. The first motion was referenced by a special master who recommended it be denied. Ford did not take exception to the

recommendation.

The record reflects that Ford filed 168 exhibits in support of its several motions for summary judgment, which included the motion on the tortious interference claim. Exhibit 165 filled three large three-ring binders. SNAPP in response filed 257 exhibits.

SNAPP managed to keep the tortious interference claim alive by a barrage of words and assertions which obscured the slender reed upon which the claim was actually based. Had Ford better focused its original motion and marshaled the facts, particularly as set forth in the Timeline, the claim would have been disposed of at a much earlier date in the history of this case. When the Court finally cut through the excessiveness, it became apparent that the claim has no basis in fact.[2]

SO ORDERED.

Dated: June 20, 2007          s/Avern Cohn
                              AVERN COHN
                              UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 20, 2007, by electronic and/or ordinary mail.

                              s/Julie Owens
                              Case Manager, (313) 234-5160

---

[2]The way in which SNAPP's tortious interference claim has finally been unmasked calls to mind the Shakespearian phrase ". . . full of sound of fury, signifying nothing." William Shakespeare, The Tragedy of Macbeth act 5, sc. 5