UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTO INDUSTRIES SUPPLIER
EMPLOYEE STOCK OWNERSHIP
PLAN (ESOP),

    Plaintiff,

v.                                                                                    Case No. 03-74357

SNAPP SYSTEMS, INC.,                                           HONORABLE AVERN COHN

    Defendant/Third-Party Plaintiff,

v.

FORD MOTOR COMPANY, SUSAN E.
KOBET, DIANE SENDEK MARCHESE,
CARMEN ZIRLES, and JEFFREY D.
COLLINS,

    Third-Party Defendants.

_____/

**ORDER DENYING SNAPP'S MOTION FOR RECONSIDERATION
AND OFFER OF PROOF**

I.

This is a breach of contract case. Three contracts are at issue: (1) the 1995 Framework Agreement, as amended in 1996, (2) the Master Lease Agreement, and (3) the 1999 Transition Agreement. SNAPP seeks approximately 1.3 billion dollars in damages. On December 23, 2008, the Court struck SNAPP's damages analysis and related testimony.

Before the Court is SNAPP's motion for reconsideration and offer of proof. For

the reasons that follow, the motion will be denied.

II.

The background of this dispute has been set forth in numerous prior orders and will not be repeated here.

III.

A.

A E.D. Mich LR 7.1(g) governs motions for reconsideration, providing in relevant part:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest or plain. Marketing Displays, Inc. v. Traffix Devices, Inc., 971 F. Supp. 262, 278 (E.D. Mich. 1997)(citing Webster's New World Dictionary 974 (3rd ed. 1988)).  SNAPP puts forth four reasons in support of reconsideration.  Generally, SNAPP argues that it was not "given a full opportunity to present its extensive documentary and testimonial evidence." SNAPP's brief at p. 4.  Each argument is addressed in turn.

B.

1.

SNAPP first says that it has been severally damaged by a process that did not give it fair notice of what it was required to prove in terms of damages.  This argument rings hollow.  The Court has commented several times in this case that ascertaining

SNAPP's damages has been elusive at best. Up until now, the Court has refrained from repeating the long history of discovery requests, orders from the special master and the Court, and the parties' various responses. In light of SNAPP's accusation, the Court is compelled to set forth the history which Ford detailed in Exhibit 1 to its response to SNAPP's motion.

On March 30, 2004, Ford filed its Motion to Compel Interrogatories Nos. 15 and 16. See Dkt. # 61. In response, SNAPP represented that its damages would be provided through expert witnesses. Based on this belief, Ford withdrew its Motion.

On July 29, 2005, Thomas A. Frazee prepared his First Expert Report on Damages, in which it claimed $83 million in damages but provided no underlying information or calculations or alleged damages. The report was never filed with the Court.

On August 26, 2005, in its Brief in Opposition to Ford's Motion to Extend Expert Report Submission dates, SNAPP represented that it would introduce damages through its lay witnesses, who previously had not given damages testimony. See Dkt. # 210; see also Ford's Ex. 11, 12, 13, Vetter 11/12/04 Dep. at 222:2-224:21; Miller 11/19/04 Dep. at 366:19-23; and Thacker 10/22/04 Dep. at 552:9-553:24.

On October 7, 2005, having not received a damages explanation from SNAPP, Ford again filed its Motion to Compel Responses to Interrogatories Nos. 15 and 16. See Dkt. # 258.

On April 6, 2006, a Special Master ordered SNAPP to supplement its responses to Interrogatories Nos. 15 and 16. See Dkt. # 322.

In response, SNAPP identified eleven categories of damages totaling $81.33

3

billion (less a credit).  SNAPP objected to any obligation to identify "each and every category of damages" and "all documents" as "unreasonably burdensome."

As it still lacked a complete understanding of SNAPP's damage claims, on July 11, 2006, Ford filed its Second Motion to Compel Interrogatories Nos. 15 and 16.  See Dkt. #363-1.

In the September 12, 2006 Report and Recommendation, the Special Master again ordered SNAPP to produce specific and detailed damages information.  See Dkt. # 395.

SNAPP objected to the 09/12/06 R&R; the Court adopted the R&R and Ordered SNAPP to provide a calculation for each category of damages, identify witnesses who will testify, and specify the documents SNAPP will rely on.  See Dkt. # 454; see also Ford's Ex. 4, 02/07/07 Hr'g Tr. at 6:12-18.

On April 2, 2007, SNAPP filed its Supplemental Response to Interrogatories Nos. 15 and 16, which failed to comply with the 09/12/06 R&R and the Court's 02/16/07 Order.

At the April 4, 2007 Pretrial Conference, the Court Ordered SNAPP to produce a damages tabulation with a computation of damages.  See Ex. 5, 04/06/07 Hr'g Tr. at 46:18-47:25.

On April 30, 2007, SNAPP filed a one page "Damages Table" claiming $7.3 billion in damages but did not provide any calculation or information/documents in support.  See Dkt. # 480.

In response, on May 30, 2007, Ford filed its first Motion to Strike SNAPP's damages claims.  See Dkt. # 485.

Rather than rule on Ford's Motion to Strike, the Court gave SNAPP another opportunity to provide a detailed damages calculation at the May 18, 2007 Status Conference.

On June 20, 2007, SNAPP submitted its "Submission Regarding Damages," in which it claimed a "net amount due pursuant to the contracts" of $5.157 billion. See Dkt. # 501.

At a June 22, 2007 Status Conference, Ford's Motion to Strike was set for hearing because "nothing" in SNAPP's 06/20/07 submission showed an "analytical base" for the damages calculations. See Ex. 6, 06/22/07 Hr'g Tr. at 3:21-24.

On August 1, 2007, Ford's Motion to Strike was heard, and although the Court recognized that SNAPP's debit/credit approach was inappropriate and its damages submissions did not comply with the Court's order, and the Court warned SNAPP that its "case will be dismissed for failure to be forthcoming in discovery and comply with the orders of the Court to provide an analysis of damages claimed by SNAPP for breach of contract against Ford," the Court gave SNAPP another opportunity to provide a revised damages analysis. See Ex. 7, 08/01/07 Hr'g Tr. at 9:19-23.

On September 10, 2007, SNAPP filed an Expert Report Prepared By Thomas A. Frazee (Frazee Report) on damages (Dkt. # 513). The Frazee Report calculated SNAPP's damages to be approximately 3.9 billion dollars, broken down into several categories. See Exhibit 1 - Exhibit B to Frazee Report.

On October 5, 2007, Ford's filed a Motion to Strike SNAPP's Final Damages Report. Ford argued that the Frazee Report fell short in several respects in properly identifying and supporting SNAPP's claimed damages. See Dkt. # 518.

At the December 5, 2007 hearing on Ford's Motion, the Court expressed doubt about Frazee's competency as an expert witness and ordered in-court examination.

Consequently, SNAPP was given the opportunity, over five days of Court-monitored Daubert hearings, to show that its damage report rested on a sufficient factual predicate.

At the conclusion of this hearing, the Court stated:

> I think that's the crucial question here, whether there is a factual predicate for the opinions expressed by Mr. Frazee or whether – and that can be supported by Mr. Vetter or [Mr. Thacker]'s testimony. I have a considerable concern that there is an inadequate factual predicate for much of the opinions expressed by Mr. Frazee even as supplemented by the data from Mr. Vetter, and I think . . . that's the crucial issue the Court has to decide.

5/5/2008 Hr'g Tr. at 204. The Court also afforded SNAPP the opportunity to decide whether to file an amended damages report in light of the testimony at the hearing. On May 6, 2008, the Court entered an order setting forth time limits pertaining to whether or not SNAPP elected to file an amended report. In either instance, Ford was directed to file an amended motion to strike. SNAPP chose to submit an amended report.

On July 3, 2008, SNAPP filed its Supplemental Expert Report on Damages, its sixth damages analysis, and claimed $1.3 billion in damages. See Dkt. # 542.

Ford filed its third Motion to Strike SNAPP's Damage Analysis and Related Testimony on August 27, 2008. See Dkt. # 544.

On December 23, 2008, the Court granted Ford's Motion to Strike SNAPP's Damage Analysis and Related Testimony and held that the Frazee Report did not satisfy Rule 702 and the related testimony of Frazee, Thacker, and Vetter did not support a factual predicate for SNAPP's claimed damages. See Dkt. # 573.

SNAPP then filed the instant motion for reconsideration. See Dkt. # 577. Ford, at the Court's direction, filed a response. See Dkt. # 578.

2.

What the above chronology shows is that the Court held Ford's initial motion to strike in abeyance for approximately one year and a half while affording SNAPP multiple opportunities to come forth with a cogent damage analysis, particularly the factual predicate for its damages. As Ford points out, SNAPP's strategy has been consistent; it always says more information is forthcoming or but no factual predicate is ever revealed. The most recent affidavit of Thacker, dated January 15, 2009, confirms this inasmuch as he states that "SNAPP never intended the [Frazee] report to be an omnibus of every damage element . . .)  See ¶ 7.

The Court also finds SNAPP's contention that it was given an impossible burden in terms of what was required by the Special Master and Court to prove its damages not well taken. Damages is an element of SNAPP's breach of contract claim. SNAPP has been required to do no more than what is necessary to allow their case to go forward. The process has been long and no doubt tedious, but required in order to ensure that SNAPP's damages are sufficient to take the case to trial.

SNAPP also contends that the "ground rules" for the in-Court depositions were never properly established. This argument is belied by the record where the Court stated that the hearings of SNAPP's damage witnesses were intended to be the equivalent of a Daubert hearing. See Ex. 2 to Ford's response, 1/17/08 Hr'g Tr. at 3: 23-46. SNAPP was also aware that the hearing would test Frazee's ability to act as a summary witness, which SNAPP had itself asserted as a ground for allowing Frazee's

7

testimony.

SNAPP also argues that it did not have an opportunity to prove the admissibility of its business records. This argument is not understood. The hearings were designed to test Frazee and SNAPP's other proposed damage witnesses, as to the basis for SNAPP's now 1.3 billion in claimed damages and the factual predicate for those damages. The issue of admissibility of business records was not raised. To be sure, it was assumed that SNAPP's damages would be based on business records. At the hearing, however, it became clear that SNAPP could not point to the business records in a way which allowed for an understanding of its damages. Moreover, the Court never rejected any of the exhibits SNAPP used at the hearing, or rendered any ruling as to whether or not they were business records. Thus, this issue is irrelevant to the Court's decision to strike SNAPP's damages and related testimony.

SNAPP's contention that it did not have a full and fair opportunity to examine its witnesses in keeping with proper procedure is disingenuous. SNAPP had ample opportunity to examine each witness. Notably, SNAPP chose not to redirect Frazee. Moreover, the Court also afforded SNAPP the opportunity after the hearing to submit of proffer of Thacker as to what he could contribute to the Frazee Report and would, if appropriate, entertain his deposition continuation at a later date. And, the Court also said at the conclusion of the hearings, "[y]ou can also have this. If [Ford] files a motion to strike the Frazee report or modify it, you can come back at that point and argue you weren't given the opportunity through your witness, this witness, to justify that discovery was cut off at that point." Id. at 214:20-24. SNAPP, however, conceded that: "[t]he Court has offered SNAPP the opportunity to tender a proffer of the evidence it would

8

have provided if the proceedings had not been truncated. While SNAPP appreciates that opportunity, a further evidentiary proceeding should not be necessary. The October 3, 2008 Vetter Affidavit demonstrates that SNAPP will be able to prove with admissible evidence each and every fact underlying Mr. Frazee's opinions." See SNAPP's response to Ford's Motion to Strike at p. 30-31.

Likewise, SNAPP's assertion that the Court erred in depriving it of its right to select witnesses and go first and law during the hearing fails to consider the context of the hearings. The Daubert hearings were held in connection with Ford's motion to strike. Regardless, the Court allowed SNAPP to begin the hearings with direct examination of Frazee. At no time did SNAPP object or explain it was being denied a procedural right or that it was prejudiced as a result of the order of examination.

Overall, SNAPP's contention that reconsideration is warranted because of the manner in which it was required to submit its proof of damages and the way in which the hearing was conducted is not well-taken.

C.

SNAPP also says that the Court erred requiring reconsideration because it found facts adverse to SNAPP and controverted by the evidence. This argument presents the same arguments considered and rejected by the Court in granting Ford's motion to strike, particularly the Court's findings as to the ability of Thacker and Vetter to provide competent testimony of SNAPP's damages, whether its reliance on summaries is appropriate, and whether SNAPP's document production was adequate. This argument does not present grounds for reconsideration.

D.

9

There are some final points in SNAPP's motion which requires attention regarding its offer of proof.  SNAPP has submitted the recent affidavits of Thacker and Gary Miller, and refers to the October 3, 2008 affidavit of Vetter which it says it would have provided at the hearing.  None of the material in these affidavits is newly discovered or previously unavailable which SNAPP could not have provided to the Court along with its prior damage submissions.  The inclusion of an affidavit from Miller is interesting.  SNAPP now says that it has "numerous other witnesses for damages," including Miller.  At no time did SNAPP ever put forth anyone but Thacker or Vetter as individuals with knowledge of SNAPP's damages and able to provide a factual predicate.  While Miller states that he was involved in the preparation of summaries, there is no mention of this level of involvement in any of SNAPP's prior damage submissions, including Miller's seven prior affidavits filed in this case relating to various summary judgment motions.  As Ford explains in its response, Miller's statement that he was "involved" in the preparation of the summaries provides no specifics as to the level of involvement, contribution to, or knowledge of those summaries.  SNAPP explains its failure to call or mention Miller at the hearing, stating "there was no reason to do so." This excuse is difficult to understand in light of the clear directive that the purpose of the hearing was for SNAPP to present factual proof supporting its damages sufficient to back up the Frazee report and have the case go forward.

IV.

In the end, none of SNAPP's arguments seeking reconsideration of the Court's ruling regarding its damages are persuasive. The motion for reconsideration is DENIED.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: March 9, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 9, 2009, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160